Harold Michael NEWTON and
Roger Lynn STRICKER *v.* STATE of Arkansas

CR 80-230                                          609 S.W. 2d 328
Supreme Court of Arkansas
Opinion delivered December 15, 1980
[Rehearing denied January 19, 1981.]

*Elrod & Lee*, by: *John R. Elrod*, for appellant Stricker.

*Jeff Duty*, for appellant Newton.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Roger Lynn Stricker and Harold Michael Newton were convicted of theft by receiving and sentenced to two years imprisonment.

They were tried jointly but were defended by separate attorneys. On appeal each raises different arguments of error but both attack the constitutionality of the Theft by Receiving Statute, Ark. Stat. Ann. § 41-2206. Stricker's other argument is that a livestock auction ticket was improperly admitted as evidence; Newton's other arguments are that the evidence was insufficient to support his conviction and that an instruction given to the jury amounted to a comment on the evidence in violation of Article 7, § 23, of the Arkansas Constitution. Since we find no merit to any arguments of error, we must affirm their convictions.

Stricker owned a farm near Gentry in Benton County, Arkansas. Newton is his stepson. According to the record, Stricker was twenty-five years old and Newton was twenty-three at the time these events took place. The evidence showed that they took five head of cattle, which had been stolen the day before in Arkansas, to a sale barn in Oklahoma. The livestock consisted of four Hereford calves and a Charlois heifer weighing about 600 pounds. The calves were only ten days old or less. Neither party disputed that the cattle were stolen — their defense was they did not know it.

They transported the calves to the sale barn in the back of a pickup truck which had a camper on it — an unusual mode of hauling cattle. As they unloaded the calves at the auction barn, an employee became suspicious because of the type of vehicle, the age of the calves, and the absence of a

vehicle tag on the truck. When Stricker was asked if it were not unusual to be selling such young beef calves, he replied that he had traded for them. It is not unusual to see young calves from dairy cows being sold, but it is to see such young beef calves being sold. The calves were listed for sale in the name of R. L. Summers, Route 1, Westville, Oklahoma.

Officers from the sheriff's office came to the barn and sought out Stricker and Newton. There was evidence that the suspects tried to evade the officers.

The Stricker camper-pickup truck was searched and evidence was discovered that it had been used to transport livestock prior to this time. The windows in the camper were covered on the inside with burlap sacks and a half gallon bottle with a nipple on it was found under the front seat. Stricker testified he did not know how the bottle got there. The bottle contained a small amount of fresh milk formula. There was testimony that such a bottle is often used to entice small calves away from their mothers. Also, a set of bolt cutters and Arkansas vehicle tags were found in the truck.

Both appellants gave written statements to the sheriff's office and both testified. Both said that the cattle belonged to R. L. Summers. Stricker said that he had done business several times before with Summers, selling him hay and straw, and that that morning Summers had come to his farm for hay. First Stricker said that Summers had offered to trade for the calves and finally that Summers had asked him to haul the calves to the sale barn for $20.00.

Two witnesses who were familiar with the vicinity of Route 1, Westville, Oklahoma, said they had never heard of R. L. Summers. Stricker said that while he had traded several times with Summers he had never been to Summers' farm. R. L. Summers were never produced as a witness.

Newton argues that he was a mere bystander, that he knew nothing about cattle, and that the evidence did not warrant his conviction. However, there was sufficient evidence for the jury to find Newton guilty. Newton claimed to know R. L. Summers. Newton's testimony in several

regards was inconsistent with his original written statement. His written statement was "we loaded the cattle . . .", but his testimony was that he did not go to the barn until they were already loaded. He was with Stricker at the sale barn, helped unload the cattle and according to a sheriff's deputy tried to evade the uniformed officer. Newton contradicted Stricker's statement that they stopped for gas enroute to the sale barn by saying that they bought no gas. No doubt Newton's credibility suffered when he conceded a prior conviction for burglary and grand larceny. It was for the jury to determine the weight to be given such evidence, and we find substantial evidence to support their finding.

Both appellants argue that the Arkansas statute concerning theft by receiving is unconstitutional. The statute reads:

> 41-2206. Theft by receiving. − (1) a person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing that it was stolen, or having good reason to believe it was stolen.

The appellants contend that the phrase "or having good reason to believe it was stolen" is unconstitutional for two reasons: it is vague and it does not describe criminal misconduct, only negligent conduct.

There is no doubt that a penal statute must be in definite language to be constitutional. The test regarding vagueness is whether people of common intelligence have to guess at its meaning. *Connally* v. *General Const. Co.*, 269 U.S. 385 (1926); *Neal* v. *State*, 259 Ark. 27, 531 S.W. 2d 17 (1975). The language of the statute should convey definite warning of the prohibited conduct when measured by common understanding and practices. *U.S.* v. *Petrillo*, 332 U.S. 1 (1947); *Martin* v. *State*, 261 Ark. 80, 547 S.W. 2d 81 (1977).

The Michigan court described the problem in discussing the words "good repair":

> It would be difficult, if not impossible, to lay down

a rule of conduct in more exact terms which would at the same time cover the varying conditions presented in each individual case. . . . [T]here are many crimes on our statute books which must be defined by the use of words of a general and flexible meaning, and the existence or nonexistence of the essential elements of these crimes becomes a question of fact to be determined in each case. . . . It is necessary to apply the rule of reason or common understanding to many statutes in order to carry out their purpose. *People* v. *Sarnoff*, 302 Mich. 266, 4 N.W. 2d 544 (1942).

The appellants cite the case of *Davis* v. *Smith*, 266 Ark. 112, 583 S.W. 2d 37 (1979) in support of their argument. In *Davis* we held that the phrase "a proper home," was too vague. Obviously, what would be proper to one person would not always be proper to another. We do not find the *Davis* case controlling.

We do not deem the language of the statute in issue to be vague. A person of common intelligence would know what it means to receive stolen property and to have good reason to believe that it was stolen. How could such misconduct be described more clearly? No suggestion is made by the appellants as to how a statute could read more specifically.

The second line of attack on the constitutionality of this statute is that the statute proscribes only negligent conduct and not criminal conduct. That is, that in a criminal statute there must be some criminal intent for the statute to be constitutional; if the statute only describes negligent misconduct then it is not constitutional.

The case of *People* v. *Johnson*, 564 P. 2d 116 (Colo. 1977), is cited as authority for that proposition. The Colorado Supreme Court held that the phrase "reasonable cause to believe," in a statute similar to Arkansas's was unconstitutional because it lacked the requirement of criminal intent. In addition to the Colorado case it is argued that there are no guidelines as to what "good cause to believe" means. It could mean one thing to one person and something else to another. Without any guidelines, the statute could mean that

one person would be guilty of a crime whereas another would not be. In regard to this argument we adopt the view expressed by the Oregon court in *State* v. *Redeman*, 9 Or. App. 329, 496 P. 2d 230 (1972). The Oregon statute contains exactly the same phrase as the Arkansas statute, "having good reason to believe." The Oregon court pointed out that the question was whether from the circumstances the defendant – not some other person – believed that the goods had been stolen. It is an individual test regarding the intent of the accused and not a test of whether a reasonable person would consider the goods stolen. The Oregon court held that the statute required actual knowledge or belief and was therefore constitutional.

In *Hoard* v. *State*, 80 Ark. 87 (1906), we said ". . . when nothing is shown to the contrary, the law presumes the defendant to be a person of ordinary reason, and holds him accountable as such."

The Arkansas statute was adopted using the Oregon statute as a guide. *See* Commentary, Ark. Stat. Ann. § 41-2206. There is no doubt that the Arkansas General Assembly did relax the state's burden of proof by adopting Ark. Stat. Ann. § 41-2206. It did so with the knowledge that convicting a "fence" had been difficult under the old law. A "fence" is a person who buys and sells stolen goods. Webster's New World Dictionary. The language of the statute clearly describes the conduct of one who is known as a "fence" because such a person does not want to know if the goods are stolen. The same would be true of an individual who closes his mind to the facts, yet receives goods anyway, having good cause to believe the goods are stolen. The language describes conduct of one who has more than a suspicion that the property is stolen; it describes more than just carelessly receiving stolen property; it describes conduct which crosses those boundaries and becomes a wrongful act by a guilty mind.

Stricker's other argument is that the State was allowed to introduce the receipt made for the cattle at the auction barn, when the document had not been provided to the defense before trial. The prosecuting attorney argued that the omission was an innocent oversight and the judge agreed.

Such a matter is discretionary with the-trial court. Rules of Crim. Proc., Rule 19.7. Furthermore, no argument is made as to any prejudice that resulted from the introduction of the ticket. The ticket merely reflected that the cattle were owned by R. L. Summers, Route 1, Westville, Oklahoma, and listed five head of cattle. This evidence had already been offered in other forms to the jury.

Newton's final argument is that an instruction was given which amounted to a comment on the evidence, a practice prohibited by Article 7, § 23, of the Arkansas Constitution. The section reads: "Judges shall not charge juries with regards to matters of fact . . .", and it has been enforced consistently. *Flynn* v. *State*, 43 Ark. 289 (1884); *Burgess* v. *State*, 206 Ark. 157, 174 S.W. 2d 239 (1943).

The instruction given in this case was taken from Arkansas Model Criminal Instructions, Number 2206, and reads:

> Harold Michael Newton and Roger Lynn Stricker are charged with the offense of theft by receiving. To sustain this charge the State must prove beyond a reasonable doubt that Harold Michael Newton and Roger Lynn Stricker acquired possession or control of or disposed of stolen property of another person, knowing or having good reason to believe that it was stolen.

> *Evidence that Harold Michael Newton and Roger Lynn Stricker were in unexplained possession or control of recently stolen property*, may be considered by you along with all the other evidence in the case in deciding whether they knew or believed that the property was stolen. However, *this evidence* does not impose any duty upon you to find that Harold Michael Newton or Roger Lynn Stricker knew or believed that the property was stolen. [Emphasis added.]

Newton points out that the emphasized language in the instruction amounts to a comment on the evidence. There is no doubt that it was a jury question as to whether the defendants were or were not in unexplained possession of recently

stolen property. *Burgess* v. *State, supra*. However, the question is, did the instruction comment on the facts.

In *Petty* v. *State*, 245 Ark. 808, 434 S.W. 2d 602 (1968), we approved an instruction concerning possession of recently stolen property which read:

> The possession of property recently stolen without reasonable explanation of the possession is evidence which goes to you for your consideration under all the circumstances of the case to be weighed as tending to show the guilt of one in whose hands such property is found. But such evidence alone does not impose upon you the duty of convicting even though it be not rebutted.

When the instruction in the *Petty* case is compared to the AMCI instruction, it is noticed that the difference is not great. The AMCI instruction does not say there *was* evidence the appellants were in unexplained possession; it simply says evidence that they were may be considered by the jury. The only change that might be made to make the AMCI instruction read as the *Petty* instruction read, would be to add, "any" before the word evidence in the first line of the second paragraph, and "such" evidence rather than "this" evidence in the second sentence of that paragraph. The question to us is not which would be the better draftsmanship but whether the instruction given violated the constitution. Since the AMCI instruction is not argumentative in form and does not comment upon the weight of evidence, we find it a proper instruction.

Affirmed.

MAYS, J., dissents.

PURTLE, J., not participating.

RICHARD L. MAYS, Justice, dissenting. Under our statute, a person commits the offense of theft by receiving if he receives stolen property *knowing or having good reason to believe* it was stolen. Ark. Stat. Ann. § 41-2206 (Repl. 1977). Contrary

to the majority's view today, I find such a statute to be constitutionally infirm because it criminally punishes innocent as well as culpable conduct. The majority recognizes the problem but holds that the reasonable person standard here is an individual test which is solely controlled by what the defendant actually believed. I cannot draw such a fine distinction. I know of no way to determine what a person has reason to believe except by determining what an ordinary person would believe under the same or similar circumstances. Obviously, the application of such a broad standard will result in criminally punishing persons for failure to exercise the intelligence of an ordinary prudent person. See *People* v. *Johnson*, 193 Colo. 199, 564 P. 2d 116 (1977). Since the statute proscribes negligent conduct and sanctions imprisonment for less than criminal intent, I would reverse the judgments below.