STATE of Minnesota, Appellant,

v.

Curtis Lowell GROVER, Respondent.

No. CX–88–766.

Supreme Court of Minnesota.

March 17, 1989.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul and Richard M. Arney, Stillwater, for appellant.

Dale G. Swanson, Forest Lake and Gary R. Schurrer, Stillwater, for respondent.

Eric R. Miller and Phillip G. Villaume, St. Paul, for amicus curiae, Minnesota Educ. Ass'n.

COYNE, Justice.

Defendant Curtis Lowell Grover is the principal of an elementary school. The State charged him with two counts of the misdemeanor offense of failing to report child abuse, Minn.Stat. § 626.556, subd. 6 (1986). The district court granted the defendant's pre-trial motion to dismiss the prosecution on the ground that the statute is unconstitutionally vague and overbroad. The State appealed the dismissal to the court of appeals. We granted the court of appeals' request for certification. Holding that the statute is not unconstitutionally vague or overbroad, we reverse and remand to the district court for further proceedings.

Early in 1987 the Cottage Grove Police Department learned that the Washington County Social Services Department had received two separate complaints of possible sexual abuse of students by a teacher at an elementary school. During the course of their investigation the police obtained the facts on which this two-count misdemeanor prosecution is based. Specifically, they learned that sometime in the spring of 1986 a mother had spoken with defendant about the teacher in question having pinched her son on the buttocks on two occasions, and that in late 1986 another mother had spoken with defendant about the same teacher having squeezed the buttocks of her 11–year–old son sometime that fall.

During their investigation the police also obtained the facts underlying two *Spreigl* notices which the State has filed informing the defendant of the State's intent to present evidence, pursuant to Minn.R.Evid. 404(b), of two other alleged violations of the reporting act by defendant. One notice relates to defendant's failure to report that in February 1984 a mother had complained that the teacher in question had choked her son in class, leaving marks on the boy's neck. The other *Spreigl* notice relates to defendant's failure to report that in September 1984 a mother had complained that the teacher had patted her daughter on the buttocks as she was leaving the classroom and that the teacher had almost choked her son in the boy's bathroom.

Since 1975 Minnesota has had a child abuse reporting law enacted in response to the requirements of the Federal Child Abuse Prevention and Treatment Act of 1974, 42 U.S.C.A. §§ 5101–07, and regulations promulgated pursuant thereto, 45 CFR §§ 1340.1–.15 (1987). *See State v. Andring*, 342 N.W.2d 128, 131 (Minn.1984). Federal assistance for child abuse programs is conditioned on adoption by the state of a child abuse and neglect law providing for the reporting of *"known and suspected* instances of child abuse and neglect."* 42 U.S.C.A. § 5103(b)(2)(B) (emphasis supplied). *See also* 45 CFR § 1340.14 (1987).

The public policy to be served by Minn. Stat. § 626.556 (1986) is spelled out in its initial subdivision:

Subdivision 1. **Public policy.** The legislature hereby declares that the public policy of this state is to protect children whose health or welfare may be jeopardized through physical abuse, neglect or sexual abuse; to strengthen the family and make the home, school, and community safe for children by promoting responsible child care in all settings; and to provide, when necessary, a safe temporary or permanent home environment for physically or sexually abused children.

In addition, it is the policy of this state to require the reporting of neglect, physi-

cal or sexual abuse of children in the home, school, and community settings; to provide for the voluntary reporting of abuse or neglect of children; to require the assessment and investigation of the reports; and to provide protective and counseling services in appropriate cases.

The operative portion of the Act mandates the reporting of abuse:

A professional * * * who is engaged in the practice of * * * education * * * who knows or has reason to believe a child is being neglected or physically or sexually abused shall immediately report the information to the local welfare agency, police department or the county sheriff * * * *

Minn.Stat. § 626.556, subd. 3(a) (1986). Section 626.556, subd. 2(a) defines "sexual abuse" to include the subjection of a child to any act which constitutes a violation of the criminal sexual conduct statutes, *see* Minn.Stat. §§ 609.342–.345, and any act involving a minor which constitutes a violation of the prostitution laws, *see* Minn.Stat. §§ 609.321–.324, or the laws relating to the use of minors in a sexual performance, *see* Minn.Stat. § 617.246. Section 626.556, subd. 2(d) defines "physical abuse" to include any physical injury inflicted on the child "other than by accidental means" or any physical injury "that cannot reasonably be explained by the child's history of injuries." Section 626.556, subd. 2(c) defines "neglect" to include failure to supply the child with necessary food, clothing, shelter or medical care or failure to protect the child from conditions imminently and seriously endangering the child's health. The act, at subdivision 4, provides a reporter with immunity from any liability that otherwise might result from his making a report if he makes the report in good faith (*i.e.*, not maliciously). The penalty provision, subdivision 6, is the provision with which we are primarily concerned:

A person mandated by this section to report who knows or has reason to believe that a child is neglected or physically or sexually abused, as defined in subdivision 2, and fails to report is guilty of a misdemeanor.

All 50 states, the District of Columbia, and all U.S. island territories have child abuse reporting laws, and 45 of them impose a criminal penalty for failure to report. I. Sloan, *Child Abuse: Governing Law & Legislation* 15, 43–45 (Legal Almanac Series No. 79, 1983).

■ Addressing for the first time a constitutional challenge to Minnesota's statutory requirement for the reporting of maltreatment of minors, we observe at the outset the fundamental principle that a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited [or mandated] and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. Newstrom*, 371 N.W.2d 525, 528 (Minn. 1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed. 2d 903 (1983)). *See also In the Matter of the Welfare of S.L.J.*, 263 N.W.2d 412, 417 (Minn.1978).

Defendant argues that "reason to believe" and "physically or sexually abused" are all terms which are uncertain or susceptible of arbitrary enforcement. The argument ignores, we think, both the context in which the terms appear and our obligation to uphold the constitutionality of a statute by construing it narrowly. *E.g., Welfare of S.L.J.*, 263 N.W.2d at 419 (constitutionality of disorderly conduct statute overly broad and vague as written upheld by construing it narrowly to refer only to "fighting words"); *State v. Hipp*, 298 Minn. 81, 87, 213 N.W.2d 610, 614 (1973) (construction of unlawful assembly statute narrowed to protect its constitutionality).

Minnesota's criminal code provides that " 'know' requires only that the actor believes that the specified fact exists." Minn. Stat. § 609.02, subd. 9(2) (1986). Thus, it is apparent that violation of the child abuse reporting statute entails either one of two levels of culpability: A mandated reporter who knows or believes that a child is being or has been abused but fails to report it exhibits the callousness associated with the knowing commission of a criminal act. On the other hand, neither knowing violation

nor conscious disregard of substantial risk are requisite to a violation of the reporting act. A mandated reporter who has reason to know or believe that a child is being or has been abused but fails to recognize it also violates the statute though the actor's culpability is merely negligent rather than purposeful, knowing or reckless. *See* Model Penal Code § 2.02 (1985). *See also,* Robinson & Grall, *Element Analysis in Defining Criminal Liability: The Model Penal Code and Beyond,* 35 Stan.L.Rev. 681, 694 (1983).

■ Negligence at criminal law is not the same as negligence giving rise to a civil cause of action. That distinction is clearly marked by the Model Penal Code provision limiting criminal liability for failure to perceive a risk to conduct which "involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Model Penal Code § 2.02(2)(d) and comment at ¶ 4. Although the culpability requirements of the Model Penal Code were not expressly incorporated into Minnesota's Criminal Code of 1963, we have recognized not only that the standard of the Model Penal Code governs the objective "negligence" element involved in the offense of second-degree culpably negligent manslaughter, an offense that involves both the objective element of negligence and the subjective element of recklessness, but we have defined "negligence" in the language of section 2.02(2)(d). *See, e.g., State v. Zupetz,* 322 N.W.2d 730, 733–34 (Minn.1982). *Accord State v. Frost,* 342 N.W.2d 317, 319–20 (Minn.1983). We reaffirm here the principle articulated in *Zupetz* that, absent a clear legislative declaration that a showing of ordinary negligence, in the civil sense, is sufficient evidence of a crime, we will interpret any criminal negligence statute as requiring a showing that the actor's conduct involved a "gross deviation from the standard of care that a reasonable person would observe in the actor's situation." *Zupetz,* 322 N.W.2d at 733. Inasmuch as the statute at issue contains no indication that the legislature intended criminal liability for failure to report child abuse to turn on ordinary negligence in the civil sense, we do not address the constitutionality of such a provision.

■ So interpreted, Minn.Stat. § 626.556, subd. 6 (1986) is neither unconstitutionally vague nor unconstitutionally overbroad. Numerous decisions of this court and other courts support this conclusion. For example, in *State v. Bolsinger,* 221 Minn. 154, 167, 169, 21 N.W.2d 480, 489–90 (1946), we held that "[t]he requirements of due process are satisfied by specifying standards of conduct in terms that have acquired meaning involving reasonably definite standards either according to the common law or by long and general usage" and that "[n]egligence as a test of criminal responsibility" constitutes "a sufficiently definite standard of criminal responsibility." *See also State v. Crace,* 289 N.W.2d 54 (Minn.1979); *State v. Hayes,* 244 Minn. 296, 70 N.W.2d 110 (1955). The Wisconsin court of appeals has ruled that the phrase "reasonable cause to suspect," which triggers the obligation to report pursuant to the Wisconsin child abuse reporting act, fairly notifies a person of ordinary intelligence of the obligation imposed by the statute and is not unconstitutionally vague. Conviction is permitted only when, under the totality of the circumstances presented to the defendant, a prudent person would have had reasonable cause to suspect child abuse. *State v. Hurd,* 135 Wis.2d 266, 273, 400 N.W.2d 42, 45 (App. 1986).

That the term "know or has reason to believe" has acquired a meaning in Minnesota involving reasonably definite standards seems apparent from the use of a variant of the term in Minn.Stat. § 609.53, subd. 1 (1986), which makes it a crime to receive, possess, transfer, buy or conceal stolen property, "knowing or having reason to know the property was stolen or obtained by robbery." Although the constitutionality of Minn.Stat. § 609.53 (1986) has not been challenged on grounds of vagueness or overbreadth, the constitutionality of similar language in other statutes concerning the receipt of stolen property has been upheld, apparently uniformly. *See State v. Emmons,* 57 Ohio App.2d 173, 174,

386 N.E.2d 838, 839–40 (1978); *Newton v. State*, 271 Ark. 427, 431, 609 S.W.2d 328, 330–31 (1980); *People v. Holloway*, 193 Colo. 450, 453, 568 P.2d 29, 31 (1977); *State v. Bandt*, 219 Kan. 816, 820, 549 P.2d 936, 940 (1976); *State v. Chaisson*, 123 N.H. 17, 26, 458 A.2d 95, 100 (1983). If the phrase know or have reason to know or believe is clear, definite, plain and unambiguous enough to provide a standard by which we expect Fagin and his ilk to govern their conduct, it seems sufficiently clear and definite to provide a standard for the governance of the conduct of an educator or other professional.

The United States Supreme Court, too, has upheld statutes making negligent or unreasonable conduct criminal against void-for-vagueness challenges. For example, in *Nash v. United States*, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913), Justice Oliver Wendell Holmes responded to the contention that the criminal provisions against unreasonable restraint of trade contained in the Sherman Act were unconstitutionally vague with these words:

> [T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death.

To the same effect, *see United States v. Ragen*, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942). Applying a statute making it a crime for a corporation to knowingly deduct from gross income amounts that are in excess of "reasonable" compensation for any services rendered by the recipients, the court there stated, "The mere fact that a penal statute is so framed as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct." *Id.* at 523, 62 S.Ct. at 378. These and other cases are analyzed in Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960). *See also Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The decisions in *State v. Crace*, 289 N.W.2d 54 (Minn.1979) (statute declaring that causing the death of another by "negligently believing him to be a deer or other animal" constitutes manslaughter in the second degree is clear and definite and not unconstitutionally vague) and *State v. Hayes*, 244 Minn. 296, 70 N.W.2d 110 (1955) (same) are also consistent with those of courts in other jurisdictions. *See, e.g.,* Annotation, *Statutes Prohibiting Reckless Driving: Definiteness and Certainty*, 52 A.L.R.4th 1161, particularly at § 5 (1987).

Similarly, we have no difficulty in concluding that the statute in question is not unconstitutionally overbroad in the sense of sweeping too broadly, reaching a significant amount of constitutionally protected activity. *See State v. Krawsky*, 426 N.W.2d 875, 877–78 (Minn.1988) (upholding against overbreadth and vagueness challenge statute making it a misdemeanor to interfere with a police officer in the performance of his duties). Specifically, we find no merit to the argument that requiring compliance with the statute might somehow interfere with the mandatory reporter's right of free speech by compelling him to espouse a viewpoint with which he may not wish to be associated. The mandatory reporting requirement of the child abuse statute compels no "expression" in the sense reflected in *Wooley v. Maynard*, 430 U.S. 705, 715, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977), in which it was held that the first amendment prohibits laws that require an individual "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." The statute does not compel the dissemination of an "ideological point of view," but only mandates the reporting of information—a requirement not altogether dissimilar from that imposed by the Internal Revenue Code. Moreover, a professional is free to include in a report that although the report is mandated because the reporter has "reason to believe" that a child has been abused, the reporter does not hold a personal belief that the child has been physically or sexually abused. *Cf. PruneYard Shopping Center v. Robins*, 447 U.S. 74, 87, 100 S.Ct. 2035, 2044, 64 L.Ed.2d 741 (1980).

In summary, the issue is not whether this court agrees with the legislature's chosen solution to the admittedly difficult problem of encouraging the reporting of child abuse. Although commentators are in disagreement about the wisdom of the legislature's criminally punishing negligent conduct of this sort, the legislature is clearly free to do so. *Cf. Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (while interpreting a statute as requiring a showing of knowledge, the Court made it clear that the Congress or a legislature is generally free to spell out the mental state required for a criminal offense). Here the legislature undoubtedly concluded that attaching misdemeanor criminal liability to the negligent failure to file a mandated report was necessary to provide a strong enough motive to comply with the mandatory reporting provisions of the statute. *See* Model Penal Code, § 2.02, Comment ¶ 4 (1985). In any event, the cases support our conclusion that the statute adopted by the legislature and interpreted by us is not unconstitutionally vague or overbroad. Accordingly, the district court erred in dismissing the prosecution on this basis and the case must be remanded to the district court for further proceedings.

Needless to say, we have not by our decision intended to express any opinion concerning the culpability or nonculpability of this defendant. Whether or not to commence a prosecution for violation of the statute was a discretionary decision for the prosecutor in the first instance. The ultimate determination whether the defendant committed the misdemeanor offense of criminal negligence in failing to file reports is a matter for the jury, subject of course to the defendant's right of appeal in the event of conviction.

REVERSED AND REMANDED.

KEITH, J., took no part in the consideration or decision of this case.