**STATE of Minnesota, Respondent**

v.

**Helmut MAUER, Appellant.**

**No. A05–460.**

Supreme Court of Minnesota.

Nov. 15, 2007.

Lori Swanson, Minnesota Attorney General, Saint Paul, MN, and Michael O. Freeman, Jean E. Burdorf, Hennepin County Attorneys, Minneapolis, MN, for Respondent.

William Gatton, Minneapolis, MN and Michael McGlennen, Hopkins, MN, for Appellant.

# OPINION

HANSON, Justice.

We are asked to decide whether the provision within Minn.Stat. § 617.247, subd. 4(a) (2006) (the "child pornography statute"), making it a crime to possess child pornography if the possessor has "reason to know" that the work involves a minor, requires proof of a constitutionally adequate element of scienter. Following a bench trial, the district court found appellant Helmut Horst Mauer guilty on three counts of possession of a pornographic work involving a minor because Mauer had reason to know that performers in the videos he possessed would be children. Mauer appealed but also sought postconviction relief, arguing that the statute violates the First Amendment for lack of an adequate scienter element. The district court denied Mauer's postconviction petition because it concluded that "reason to know" contained a constitutionally adequate level of scienter. The court of appeals affirmed, interpreting "reason to know" to require that a child pornography possessor be "in some manner aware" of facts which lead him to believe that a performer in the pornographic work is a child. *State v. Mauer,* 726 N.W.2d 810, 814 (Minn.App.2007). Because we conclude that the child pornography statute is not unconstitutional, but we interpret "reason to know" in a manner that is slightly different than the court of appeals, we affirm in part, reverse in part, and remand to the district court for reconsideration consistent with this opinion.

The facts of this case are undisputed. In May 2003 Mauer received a solicitation to purchase videos from a business known as "C.R.T." The business had actually been seized by United States postal inspectors, who prepared the solicitation as part of an undercover operation. The postal inspectors obtained Mauer's name and address from C.R.T.'s customer records, which indicated that he had ordered several films of child erotica in 1998 in response to a similar solicitation.[1] The May 2003 solicitation graphically described sexual acts depicted in the videos and the ages of individuals involved in them, including references to a "12 year old," "preteens," "young girls 11–13 years old," and "[performers] from 9 to 14 years old." Mauer ordered videos fitting those descriptions, and requested more information about the solicitation's "Write Your Own Script" option through which C.R.T. customers could send in details of a sexual fantasy to be acted out by a 13–year–old girl.

A postal inspector, posing as a Federal Express employee, delivered the videos to Mauer at his business in Minneapolis. Shortly after Mauer took that delivery, law enforcement officers entered his business and discovered that Mauer had opened the packages but had not viewed the contents of any of the videos. Based on these facts, the State charged Mauer with four counts of possession of pornographic works involving minors. At trial, Mauer testified that he did not believe the videos would actually involve minors,[2] but the parties stipulated that some of the videos seized from Mauer included performers that were minors.

---

1. When interviewed by law enforcement officers concerning the videos he ordered from 1998, Mauer stated that he kept them for two weeks, but upon discovering there were actual children depicted in them, he threw them away.

2. A postal inspector testified that during the interview of Mauer after the initial controlled delivery, Mauer admitted that he knew the videos would involve actual children.

The district court found Mauer guilty on three counts because he had reason to know that some performers in the videos were minors. Mauer appealed and also pursued postconviction relief on the grounds that the child pornography statute violates the First Amendment for lack of a sufficient scienter element. The district court denied Mauer's petition for postconviction relief.

The court of appeals affirmed the conviction and the denial of postconviction relief. The court interpreted "reason to know" to "require a possessor [of sexually explicit material involving a minor] to be 'in some manner aware' that the performer is a child." *Mauer*, 726 N.W.2d at 814. The court then concluded that its narrowing construction satisfied the First Amendment because it imposed a "scienter requirement that is more demanding than a civil—or a criminal—negligence standard." *Id.* at 813–14. The court recognized that the district court did not explicitly use that narrowing construction, but held that the district court's findings nevertheless satisfied this standard. *Id.* at 815–16.

## I.

■ We first consider whether Minnesota's child pornography statute contains a sufficient scienter element to satisfy the First Amendment. Although non-obscene pornography involving adult performers is protected speech under the First Amendment, child pornography is not protected. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72–73, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *New York v. Ferber*, 458 U.S. 747, 764–65, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Because of the state's compelling interest in protecting the "physical and psychological well-being" of children, a state may constitutionally prohibit possession of child pornography. *Osborne v. Ohio*, 495 U.S.

103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). In order to prohibit the possession of child pornography and yet avoid the risk of chilling protected speech in adult pornography, child pornography laws must include an element of scienter with respect to the age of minority of the performers. *See X-Citement Video*, 513 U.S. at 73, 115 S.Ct. 464 ("[T]he age of the performers is the crucial element separating legal innocence from wrongful conduct."); *see also Ferber*, 458 U.S. at 756, 102 S.Ct. 3348 ("Like obscenity statutes, laws directed at the dissemination of child pornography run the risk of suppressing protected expression by allowing the hand of the censor to become unduly heavy."); *Mishkin v. New York*, 383 U.S. 502, 511, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) ("The Constitution requires proof of scienter [in obscenity laws] to avoid the hazard of self-censorship of constitutionally protected material.").

■ Scienter is the "degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." *Black's Law Dictionary* 1373 (8th ed. 2004). In order to satisfy the First Amendment, the demonstration of a child pornography possessor's scienter requires proof of some subjective awareness, not just proof that the possessor was objectively negligent in failing to know that a performer in the work was a minor. "Negligence is not a state of mind; it is a standard of conduct a defendant is expected to maintain regardless of his state of mind." Christina Egan, *Level of Scienter Required for Child Pornography Distributors: The Supreme Court's Interpretation of "Knowingly" in 18 U.S.C. § 2252*, 86 J. Crim. L. & Criminology 1341, 1379 (1996). Because the negligent possessor need not be aware of facts related to the performer's age, the risk of chilling protected speech would increase as possessors of constitutionally permissible material were

compelled to discover the ages of those performing. *Cf. id.* at 1379 (noting the same potential chilling effect of imposing a negligence standard on distributors).

With this context in mind, we turn to Minnesota's child pornography statute, Minn.Stat. § 617.247, subd. 4(a), which reads:

> A person who possesses a pornographic work or a computer disk or computer or other electronic, magnetic, or optical storage system or a storage system of any other type, containing a pornographic work, *knowing or with reason to know its content and character,* is guilty of a felony.[3]

(Emphasis and footnote added.) Mauer argues that the "reason to know" culpability standard in the child pornography statute permits conviction where a possessor is merely negligent with respect to the age of minority of a performer, and thus dispenses with the constitutional scienter requirement. Addressing this argument requires that we determine the meaning of the phrase "reason to know" as it is used in the child pornography statute.

 Statutory interpretation is a question of law that we consider under a de novo standard of review. *State v. Al–Naseer,* 734 N.W.2d 679, 683 (Minn.2007). The primary objective for a court's interpretation of statutory language is to ascertain and give effect to the legislature's intent. Minn.Stat. § 645.16 (2006). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the

pretext of pursuing the spirit." *Id.* An ambiguity exists only where a statute's language is subject to more than one reasonable interpretation. *State v. Stevenson,* 656 N.W.2d 235, 238 (Minn.2003).

The child pornography statute contains an express scienter element. It requires proof that a person possessing a pornographic work does so "knowing or with reason to know its content and character." Minn.Stat. § 617.247, subd. 4(a). The terms "content and character" refer to the nature of the "pornographic work," the definition of which requires that individuals depicted in the work are minors. Minn.Stat. § 617.246, subd. 1(f)(2)(i) (2006). This relationship between the definition of "pornographic work" and the scienter element eliminates any question of whether the child pornography statute is "completely bereft of a scienter requirement as to the age of the performers." *See X–Citement Video,* 513 U.S. at 78, 115 S.Ct. 464. And the express inclusion of a scienter element in the child pornography statute means that this is not a case where we may treat a statute's silence on the scienter element as an ambiguity, which would then allow us to imply a constitutionally sufficient scienter requirement. *See, e.g., Al–Naseer,* 734 N.W.2d at 683 (implying a mens rea element for criminal vehicular homicide for leaving the scene of an accident); *State v. Oman,* 261 Minn. 10, 17, 110 N.W.2d 514, 520 (1961) (implying a scienter requirement in an obscenity statute). Thus, we are left with the question whether "reason to know" is clear and free of ambiguity, in which case we must enforce its plain meaning, or is ambiguous, in

---

**3.** "Pornographic work" is defined in Minn. Stat. § 617.246, subd. 1(f) (2006). Because the parties stipulated that certain videos in Mauer's possession included actual minors involved in sexual conduct, the portion of the definition relevant to this case is contained in subdivision 1(f)(2)(i), which reads:

" 'Pornographic work' means * * * any visual depiction, including any * * * video * * * whether made or produced by electronic, mechanical, or other means that * * * uses a minor to depict actual or simulated sexual conduct."

which case we may resort to the rules of construction. *See, e.g., Olmanson v. Le-Sueur County,* 693 N.W.2d 876, 879–80 (Minn.2005) ("If a statute is ambiguous, the construction that avoids constitutional problems should be used, even if such a construction is less natural.").

Mauer argues that our decision in *State v. Grover,* 437 N.W.2d 60, 63 (Minn.1989), established the plain meaning of similar words by interpreting the phrase "reason to believe" to create an objective standard of criminal negligence. As an initial matter, we observe that the words "reason to know" and "reason to believe," in ordinary usage, convey a range of meanings that could conceivably include everything from civil negligence to actual knowledge.[4] Second, we note that *Grover* was decided after the child pornography statute was first enacted in 1982, containing the "reason to know" standard. Finally, we do not read *Grover* to establish that the legislature's use of words "reason to believe" evidenced an intent to limit those words exclusively to an objective culpability standard, such as civil or criminal negligence. In other words, we read *Grover* to provide an inclusive, not an exclusive, interpretation of "reason to believe."

In *Grover* we rejected a vagueness argument by concluding that "reason to believe" was "sufficiently clear and definite to provide a standard for [the crime of failing to report child abuse]." 437 N.W.2d at 64. Because *Grover* did not involve a First Amendment concern, the child abuse reporting statute's terms could constitutionally include the whole range of culpability described by "reason to believe." In fact, the State in *Grover* was only required to prove culpability under the broadest interpretation of "reason to believe." Thus, culpability could include "culpability [that] is merely negligent rather than purposeful, knowing or reckless." *Id.* at 63. In other words, we were not required in *Grover* to resolve the ambiguity presented by the range of possible meanings of "reason to believe" because each of the possible meanings presented a sufficient basis for culpability.

Because the child pornography statute implicates the First Amendment requirement of scienter, the full range of mental states possible under the plain meaning of "reason to know" includes some that may not provide sufficient scienter. Accordingly, we are required to resolve the ambiguity presented by the range of possible meanings.

## II.

■ Having concluded that the words "reason to know" are ambiguous when viewed in the context of the First Amend-

---

4. A possessor of child pornography could be said to have "reason to know" under a civil negligence standard where he should be aware of a risk that the work involves a minor. *See Grover,* 437 N.W.2d at 63 (comparing civil and criminal negligence). A possessor of child pornography could have "reason to know" under a criminal negligence standard where he should be aware of a substantial and unjustifiable risk that the work involves a minor, and his failure to recognize that risk involves a gross deviation from the standard of care. *See id.* A possessor of child pornography could have "reason to know" under a recklessness standard where he is subjectively aware of a substantial and unjustifiable risk that the work involves a minor. *See State v. Zupetz,* 322 N.W.2d 730, 733 (Minn.1982). A possessor of child pornography could have "reason to know" under the court of appeals' standard, where he has knowledge of facts that subjectively lead him to believe that the work involves a minor. *Mauer,* 726 N.W.2d at 814. Finally, a possessor of child pornography could have "reason to know" where he has actual knowledge that the performer is a child, because actual knowledge encompasses, and does not exclude, reason to know.

ment requirement that child pornography laws contain a sufficient element of scienter, we now resort to the rules of statutory construction to determine the precise meaning of those words when used in the child pornography statute. The rules of construction permit a broad review of the purpose of and occasion for the statute and any legislative history.[5] Minn.Stat. § 645.16. Importantly, the rules also provide the presumption that "[t]he legislature does not intend to violate the constitution of the United States or of this state." Minn.Stat. § 645.17(3) (2006). Resorting to that presumption, we are bound to adopt an interpretation of "reason to know" that would avoid a constitutional conflict. See Schumann v. Commissioner of Taxation, 312 Minn. 477, 481–82, 253 N.W.2d 130, 132 (1977) ("Where a statute is ambiguous, the construction that will avoid constitutional conflict is to be preferred, even though it is less natural.").

We observe that the legislature's stated purpose in enacting the child pornography statute is to penalize possession of pornographic work involving minors and to protect the children who are victimized by their involvement in the pornographic work. Minn.Stat. § 617.247, subd. 1 (2006). That declaration of purpose suggests that the legislature intended section 617.247, subd. 4(a), to extend the penalty to the full extent permitted under the First Amendment. Preserving the legislative intent to proscribe possession of child pornography as broadly as possible can be accomplished best by selecting from the range of meanings the lowest level of awareness permitted by the First Amendment. Cf. State v. Cannady, 727 N.W.2d 403, 408 (Minn.2007) (severing a constitutionally defective affirmative defense but maintaining the rest of the child pornography statute in light of its stated purpose to penalize possession of child pornography and protect its child victims). Precisely what that minimum standard is remains unclear because the Supreme Court has avoided defining just how much or how little awareness of the content and character of an obscene work or a work of child pornography the First Amendment requires. See Smith v. California, 361 U.S. 147, 154, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Ginsberg v. New York, 390 U.S. 629, 644–45, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).[6]

The court of appeals applied the presumption that the legislature does not intend to enact laws that are unconstitutional and construed "reason to know" as follows:

---

5. The available legislative history does not reveal a precise meaning intended by the use of "reason to know" in the child pornography statute.

6. Mauer argues that the standard of scienter required by the First Amendment with respect to the age of a performer is actual knowledge, relying on the United States Supreme Court's decision in X–Citement Video, 513 U.S. at 73, 78, 115 S.Ct. 464. But that case did not address the minimum level of scienter required by the First Amendment for child pornography laws. The Court has repeatedly suggested that some level of scienter less than actual knowledge will satisfy the First Amendment. See, e.g., Ferber, 458 U.S. at 765, 102 S.Ct. 3348 ("As with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant." (emphasis added)); X–Citement Video, 513 U.S. at 78, 115 S.Ct. 464 ("'[Obscenity and child pornography cases] suggest that a statute completely bereft of a scienter requirement as to the age of the performers would raise serious constitutional doubts." (emphasis added)). In fact, the Supreme Court has held that a state law criminalizing possession of child pornography with a mental state of recklessness "plainly satisfies the requirement laid down in Ferber that prohibitions on child pornography include some element of scienter." Osborne v. Ohio, 495 U.S. at 115, 110 S.Ct. 1691.

In light of * * * First Amendment concerns that apply to child pornography, we conclude that Minn.Stat. § 617.247, subd. 4(a), should be * * * interpreted to require that the possessor be "in some manner aware" that the performer is a minor. The "in some manner aware" standard is substantially similar, if not equivalent, to the recklessness standard approved in *Osborne*. In this context, a person has "reason to know" only if he has knowledge of facts that subjectively lead him to believe that the performer is a child.

*Mauer*, 726 N.W.2d at 814 (citation omitted). The court of appeals' application of the presumption in section 645.17(3) led it to adopt the "in some manner aware" construction of "reason to know" because that standard had survived a constitutional challenge in *Mishkin*, 383 U.S. at 510–11, 86 S.Ct. 958, and *Ginsberg*, 390 U.S. at 643–44, 88 S.Ct. 1274. *Mauer*, 726 N.W.2d at 814. We have also interpreted a statute banning the distribution of obscene material to penalize "only those who are in some manner aware of the character of the material they attempt to distribute," without further explanation of the precise awareness required by that standard. *Oman*, 261 Minn. at 17, 110 N.W.2d at 520.

The adoption of the court of appeals' narrowing construction of the "reason to know" language becomes more problematic in this case because it means that a possessor must have "knowledge of facts that subjectively lead him to believe that the performer is a child." *Mauer*, 726 N.W.2d at 814. Mauer argues that this construction renders the phrase "reason to know" superfluous and conflicts with the presumption that the legislature "intends

an entire statute to be effective." Minn. Stat. § 645.17(2) (2006). For a person to " 'know' requires only that the actor believes that the specified fact exists." Minn.Stat. § 609.02, subd. 9(2) (2006).[7] Mauer argues that the court of appeals' use of the "in some manner aware" standard ultimately equates "reason to know" with a possessor's subjective belief that a pornographic work uses a minor, and the term "knowing" must also be read to require a possessor's belief that the pornographic work uses a minor. Mauer argues that this construction would transform the disjunctive phrase "knowing *or* with reason to know" into a single standard of subjective belief, contradicting not only the presumption that the legislature intends the entire statute to be effective but also the plain intent of the statute to specify separate mental states.

But we can avoid Mauer's argument that the court of appeals' narrowing construction renders the phrase "reason to know" superfluous if we determine that the lowest level of awareness permitted by the First Amendment is something less than the "in some manner aware" standard. We conclude that the recklessness standard represents the lowest level of scienter that has thus far been affirmatively approved by the Supreme Court under the First Amendment. Because the state does not propose a scienter standard less than recklessness, we will not attempt to fashion one for this case, but we recognize the possibility that the Supreme Court might, in some future case, approve a lesser standard and that, if the Court does so, it may have implications for the interpretation of Minnesota's child pornography statute.

7. Though section 609.02, subd. 9 refers to crimes "in this chapter," its definitions apply to statutory crimes outside chapter 609 "[u]nless expressly stated otherwise, or the context otherwise requires." Minn.Stat. § 609.015, subd. 2 (2006). We can see no reason why either of these exceptions applies to the use of "knowing or with reason to know" in the child pornography statute.

The Supreme Court approved a recklessness standard in *Osborne v. Ohio.* 495 U.S. at 115, 110 S.Ct. 1691. Ohio's legislature had defined recklessness as: "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a *known risk* that such circumstances are likely to exist." Ohio Rev. Code Ann. § 2901.22(c) (LexisNexis 2006) (emphasis added). In *State v. Zupetz* we explained that "[a] person acts 'recklessly' when he *consciously* disregards a substantial and unjustifiable risk that the element of an offense exists." 322 N.W.2d 730, 733 (Minn.1982) (emphasis added). We distinguished between "recklessness" and "negligence," explaining that "[t]he reckless actor is *aware* of [a] risk and disregards it; the negligent actor is *not aware* of the risk but should have been aware of it." *Id.* at 733–34 (quoting 2 Charles E. Torcia, *Wharton's Criminal Law* § 168 at 272 (14th ed. 1979) (BB R5.2(e))). Our explanation of recklessness in *Zupetz* comports with the recklessness standard approved in *Osborne* against a scienter challenge.

■ Accordingly, we hold that, under Minn.Stat. § 617.247, subd. 4(a), a possessor of child pornography has "reason to know" that a pornographic work involves a minor where the possessor is subjectively aware of a "substantial and unjustifiable risk" that the work involves a minor. Our conclusion that "reason to know" in the child pornography statute requires a showing of recklessness satisfies the rule that we construe statutory language to avoid constitutional conflicts because it avoids the serious constitutional question of whether an objective mental state, such as civil or criminal negligence, would satisfy the scienter requirement. *See Schumann,* 312 Minn. at 481–82, 253 N.W.2d at 132; *see also* Egan, *supra,* at 1379. It also furthers the legislative purpose for the enactment of the child pornography statute by selecting the lowest level of scienter permitted by the First Amendment, as affirmatively approved by the Supreme Court. Finally, it designates a level of scienter that can be sufficiently differentiated from actual knowledge to satisfy the statutory presumption that the legislature intends the entire statute to be effective.

■ We feel obliged to emphasize that our announcement of the appropriate construction of the phrase "reason to know" in Minn.Stat. § 617.247, subd. 4(a), does nothing to alter the manner by which knowledge of facts may be proved. We have long held that the proof of knowledge may be made by circumstantial evidence. *See Al–Naseer,* 734 N.W.2d at 688 (citing *State v. Siirila,* 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971)); *see also Oman,* 261 Minn. at 25–26, 110 N.W.2d at 525 (Gallagher, Frank T., J., concurring specially) (noting that, although knowledge must be proved to sustain a conviction, "the jury can find the existence of such knowledge from any relevant circumstances pointing to the probability that the defendant obtained knowledge * * *"). Proof of either actual knowledge or reason to know that a pornographic work involves a minor may also be made by circumstantial evidence.

### III.

In light of our interpretation of the mental state required by the phrase "reason to know" in the child pornography statute, we must now consider what legal standard the district court applied to the facts in this case when it reached its conclusion. The district court made several findings of fact related to its ultimate conclusion that Mauer had reason to know the videos contained child pornography. For instance, the district court found:

16. In 1998, [Mauer] ordered two projects of "child erotica" from C.R.T.

17. The child erotica projects involved actual children, as opposed to people of majority age who looked young.

18. [Mauer] threw out the child erotica projects two weeks after receiving them when he watched them and realized the actors were in fact children.

19. [Mauer] admitted on cross-examination that the descriptions for the child erotica from 1998 and the descriptions for the material for which he is presently convicted were similar.

* * * *

21. [Mauer] asserted a mistake of fact defense. The defense was premised on [Mauer's] statements that when he ordered the projects for which he is being prosecuted, he believed the actors would be of majority age, but would look young. Although mistake of fact is not prohibited by Minn.Stat. § 617.247, the Court found that the State has proven the nonexistence of this defense as a matter of fact beyond a reasonable doubt.

22. Therefore, the Court found that [Mauer] had reason to know that the actors in the present videos would be actual children.

Based on these findings, the district court concluded that, because Mauer had previously purchased child erotica from C.R.T., and that erotica involved minors, Mauer had reason to know that when C.R.T. advertises a project as involving children, the project does involve children.

It is possible that the district court determined Mauer had reason to know because, despite being unaware of a risk that the videos would involve children, a reasonable person under the circumstances should have known. It is also possible that the court determined that Mauer had reason to know because he was subjectively aware of a substantial and unjustifiable risk that the videos would involve children. Because we cannot be certain that the district court's findings of fact and conclusions of law would support Mauer's conviction under our narrowing construction of "reason to know," we conclude that the district court is in the best position to review the record and reach a conclusion as to whether Mauer was subjectively aware of a substantial and unjustifiable risk that the videos he ordered from C.R.T. would involve minors. *See State v. Hipp*, 298 Minn. 81, 87, 213 N.W.2d 610, 614 (1973) ("[I]f [a] law is found [to be overbroad or vague as applied to others], it may not be applied to [a defendant] either, until and unless a satisfactory limiting construction is placed on the statute." (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 620, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (White, J., dissenting))); *In re Welfare of S.L.J.*, 263 N.W.2d 412, 419 n. 5 (Minn.1978) ("The Supreme Court, in fact, has encouraged state supreme courts to sustain the constitutionality of their offensive-speech statutes by construing them narrowly to punish only fighting words. Thus, * * * it vacated and remanded for reconsideration [several cases].". *See also Astleford Equipment Co. v. Navistar Int'l Transp. Co.*, 632 N.W.2d 182, 193 (Minn.2001) (concluding that the district court was in the best position to determine applicability of newly articulated statutory standard).

Affirmed in part, reversed in part, and remanded to the district court for further proceedings consistent with this opinion.