STATE of Minnesota, Respondent,

v.

Naser Omer ALI, Appellant.

No. A08–1799.

Court of Appeals of Minnesota.

Dec. 15, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

Marie L. Wolf, Interim Chief Public Defender, Theodora Gaïtas, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by
SCHELLHAS, Presiding Judge;
WORKE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Naser Omer Ali appeals from his conviction of possessing cathinone, a controlled substance, arguing that the evidence was insufficient to prove beyond a reasonable doubt that he knew that the substance he possessed contained cathinone. He also argues that the district court erroneously allowed drug-test results to be presented to the jury without first conducting a hearing to determine that the testing method was reliable. Finally, Ali contends that the statute criminalizing the possession of cathinone is unconstitutionally vague by failing to specify the prohibited substance. Because the evidence is sufficient to prove that Ali knowingly possessed a controlled substance, because the lack of a pretrial hearing on the reliability of the drug-testing method did not affect Ali's substantial

rights, and because the statute as judicially construed provided adequate notice that Ali's conduct was criminal, we affirm.

### FACTS

In June 2006, Deputy Christofer Nybeck executed a search warrant at a storage unit that Ali was renting in south Minneapolis. Deputy Nybeck found fifteen shipping boxes containing dried khat, a plant grown in Africa. The plant contains two stimulants: cathinone and cathine. Cathinone is present in greater quantities in fresh khat but begins to degrade into the less potent cathine within days of harvest. Ali's khat tested positive for cathinone.

The state charged Ali with knowingly possessing cathinone, a fifth-degree controlled substance crime. Ali pleaded not guilty. A jury considered evidence that supported the following factual scenario.

Ali received fifteen FedEx shipments of dried khat from three different sources in two cities in Kenya between June 2005 and March 2006. Drug dealers commonly ship illegal drugs through commercial courier services such as FedEx and make shipments on multiple dates. Drug distributors also commonly purchase their drugs from multiple sources.

All of the seized khat shipments were addressed to Ali at 1700 22nd Street in Minneapolis. This address differs from the address Ali listed for himself on the storage-unit lease—394 Pierce Street in St. Paul—and the address on his Minnesota driver's license—1900 Sheridan Avenue in St. Paul. Each box contained 4 to 17 pounds of khat for a total weight of roughly 140 pounds. The khat had an estimated street value of $13,000. Two of the boxes each contained approximately 25 quarter-pound baggies of individually packaged khat. And two of the shipping boxes had been falsely labeled as "herbal body dye."

Becky Willis, the chemist who tested Ali's khat for the Minneapolis Police Department, testified without objection about her testing method. She used acid to dissolve some of the khat and then analyzed the solution with a gas chromatograph and mass spectrometer (GCMS). Willis's test indicated that the khat sample contained cathinone. She explained that her testing method could detect an amount of cathinone that might be imperceptible to human scent. She could not quantify the amount of cathinone present in Ali's khat, and not all scientific studies agree on the rate at which cathinone degrades in harvested khat. A chemist from the St. Paul Police Department's crime lab testified that she had never been able to detect cathinone in dried khat using the GCMS method.

The jury convicted Ali of knowingly possessing cathinone. This appeal follows.

### ISSUES C

I. Was the evidence sufficient to support Ali's conviction of knowingly possessing cathinone under Minnesota Statutes section 152.025?

II. Did the district court plainly err by failing to hold an evidentiary hearing *sua sponte* to establish the reliability of the state's unobjected-to drug-testing method?

III. Does Minnesota Statutes section 152.025 as construed by caselaw provide constitutionally sufficient notice that possessing khat is criminal?

### ANALYSIS

#### I

Ali first argues that the jury received insufficient evidence to prove that he knew the khat in his storage unit contained cathinone. We therefore will scrutinize the record to determine whether the

evidence, viewed in the light most favorable to the conviction, supports the guilty verdict. *See State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably have concluded that Ali was guilty of the charged offense. *See Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004).

■ The operative statute provides that "[a] person is guilty of controlled substance crime in the fifth degree if … the person unlawfully possesses one or more mixtures containing a controlled substance classified in schedule I, II, III, or IV." Minn.Stat. § 152.025, subd. 2 (2006). Cathinone is a schedule I controlled substance. Minn.Stat. § 152.02, subd. 2(6) (2006). Possession crimes require proof that the defendant "had actual knowledge of the nature of the substance" in his possession. *State v. Papadakis*, 643 N.W.2d 349, 354 (Minn.App.2002) (quotation omitted).

Ali argues that the evidence was not sufficient to establish that he knew that his khat contained cathinone. The state responds that Ali's conduct shows that he knew he possessed an illegal controlled substance.

Our supreme court has not had occasion to clarify whether Minnesota's actual-knowledge requirement may be satisfied by proof that the defendant knew that the substance he possessed was illegal. This is the position taken by most federal courts of appeals. *See United States v. Hussein*, 351 F.3d 9, 18 (1st Cir.2003) (observing that the federal cases are "legion" that hold that knowledge of a substance's illegality is sufficient *mens rea* for drug-possession crimes, and citing cases); *see also United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir.2009) ("[T]he law is settled that a defendant need not know the exact nature of a drug in his possession to violate [federal controlled substance law]; it is sufficient that he … be aware that he … possesses some controlled substance.") (quotation omitted); *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir.2003) ("[D]rug type and quantity are irrelevant to the *mens rea* element of [the federal controlled substance statute], which requires nothing more specific than an intent to distribute a controlled substance."); *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.2002) ("[A] defendant can be convicted [of possessing a controlled substance] if he believes he has some controlled substance in his possession.") (quotation omitted); *United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir.2001) ("[I]t is well settled that the Government must show that the defendant knew that the substance in which he trafficked was a controlled substance."); *United States v. Carrera*, 259 F.3d 818, 830 (7th Cir.2001) ("The government need only prove that the defendant was aware that some controlled substance was involved."); *United States v. Sheppard*, 219 F.3d 766, 769 (8th Cir.2000) (holding that the government need not prove that the defendant "actually knew the exact nature of the substance" to establish *mens rea;* knowledge of drug's illegality is sufficient) (quotation omitted); *United States v. Valencia–Gonzales*, 172 F.3d 344, 345 (5th Cir.1999) (holding that *mens rea* required for possession of a controlled substance is knowledge that defendant possessed a controlled substance); *United States v. Leavitt,* 878 F.2d 1329, 1337 (11th Cir.1989) ("[T]he government need not prove that [defendant] actually knew that the substance involved was methaqualone as long as he knew he was importing a controlled substance.").

State courts have followed the same approach. *See, e.g., People v. Martin,* 25 Cal.4th 1180, 108 Cal.Rptr.2d 599, 25 P.3d 1081, 1083–84 (2001) (holding that a defendant's knowledge of the presence of the controlled substance and its nature as a restricted dangerous drug requires no further showing of a subjective mental state); *State v. Sartin,* 200 Wis.2d 47, 546 N.W.2d 449, 455 (1996) ("[T]he only knowledge [required] in a possession of a controlled substance case is the defendant's knowledge or belief that the substance was a controlled or prohibited substance. The State is not required to prove the defendant knew the exact nature or precise chemical name of the substance."); *Commonwealth v. Rodriguez,* 415 Mass. 447, 614 N.E.2d 649, 653 (1993) ("Proof that the defendant knew the exact nature of the controlled substance is not an element of the crime [of trafficking]."); *People v. Bolden,* 62 Ill.App.3d 1009, 20 Ill.Dec. 79, 379 N.E.2d 912, 916 (1978) (holding that "it was not necessary for the State to prove that the defendant knew the precise nature of the controlled substance" he was convicted of delivering when evidence established that he knew it was a controlled substance).

■ Consistent with this precedent from other states and the overwhelming majority of federal circuits, we hold that when a defendant is prosecuted for possessing cathinone-containing khat, proof that the defendant was aware that he possessed a controlled substance satisfies the statute's actual-knowledge requirement.

■ Since Ali did not testify to his state of mind, there was only circumstantial evidence that he knew the khat contained a controlled substance. It is true that "a conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones,* 516 N.W.2d 545, 549 (Minn.1994). But Ali's conviction

was not based entirely on circumstantial evidence. The direct evidence of scientific testing proved that Ali possessed cathinone. The only element proven by circumstantial evidence was Ali's *mens rea* regarding the nature of the substance. Knowledge is customarily determined from circumstantial evidence. *See State v. Mauer,* 741 N.W.2d 107, 115 (Minn.2007) ("We have long held that the proof of knowledge may be made by circumstantial evidence."). And because the fact-finder is in the best position to weigh circumstantial evidence, its verdict is entitled to deference on review. *Webb,* 440 N.W.2d at 430.

We conclude that the evidence is consistent with the hypothesis that Ali knew that his khat contained an illegal drug and is inconsistent with any other rational hypothesis. The jury could have inferred from the surreptitious manner of Ali's receipt and storage of the khat that he was distributing it secretly, taking careful steps to conceal both his possession and distribution. This supports a rational finding that Ali knew that his dried khat contained a controlled substance.

Ali argues that the evidence was inconsistent with the state's theory that he knew he possessed cathinone. He maintains that his possession of khat was "blatant" and open and therefore not indicative of criminal intent. He emphasizes that he received the shipments and rented the storage unit under his actual name, that he made no effort to mask the khat's distinctive smell and kept it in boxes in his own storage unit, and that he was not personally involved in mislabeling the boxes shipped to him from Africa. But the jury could have reasoned that the "blatant" and somewhat open nature of Ali's possession demonstrates audacity or naiveté instead of innocence. That his concealment effort was flawed and unsuccessful does not require a finding that his motives were inno-

cent or render the jury verdict unreasonable. And although Ali may not have been personally involved in mislabeling the boxes shipped to him from Africa, their obvious mislabeling bolsters the implicit finding that he recognized that the khat constituted or contained an illegal substance.

Ali highlights that cathinone is not detectable by human senses alone and that he took no steps to preserve the cathinone using any customary preservation method, such as refrigerating the khat or wrapping it in banana leaves. But as we have already observed, the state need not prove that Ali knew the exact chemical nature of the substance so long as it has proved that he knew he possessed an illegal substance. The evidence supports the jury's implied finding that Ali illegally possessed khat for the stimulant effect of its cathinone.

## II

■■■ Ali next argues that the district court erred by failing to conduct an evidentiary hearing to determine whether the GCMS method used by the chemist is reliable for detecting cathinone in khat. Expert testimony is admissible if it will "assist the trier of fact to understand the evidence." Minn. R. Evid. 702. Before evidence derived from a novel scientific technique may be admitted, the district court must find (1) that "experts in the field widely share the view that the results of scientific testing are scientifically reliable" and (2) that "the laboratory conducting the tests in the individual case complied with appropriate standards and controls." *State v. Roman Nose*, 649 N.W.2d 815, 819 (Minn.2002). Ordinarily, the district court holds a pretrial evidentiary hearing, known as a *Frye–Mack* hearing, to determine these two issues. *Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn.2000).

But Ali did not ask the district court for a *Frye–Mack* hearing or object to Willis's testimony. An appellate court has the discretion to review unobjected-to errors that are "plain" and "affect[ ] substantial rights." Minn. R.Crim. P. 31.02. Ali therefore can prevail in his challenge only if he can establish that the district court plainly erred by not conducting a *Frye–Mack* hearing *sua sponte*.

Ali cannot establish plain error because the district court's alleged omission did not affect his substantial rights. A defendant may have various practical and strategic reasons to challenge an expert opinion on the merits through cross-examination rather than to challenge the opinion's foundation in an early proceeding. *See Schneider v. State*, 725 N.W.2d 516, 521–22 & n. 3 (Minn.2007) (discussing strategic bases for defendant to forgo a *Frye–Mack* hearing and to save the challenge for a vigorous cross-examination of the state's experts). Ali vigorously cross-examined Willis to establish that cathinone degrades rapidly, that the testing lab lacks accreditation, and that there are conflicting approaches to testing khat, among other things. That Ali did not request a *Frye–Mack* hearing or object to the evidence at trial fits a plausible strategy to discredit the lab and its testing method openly, in front of the jury, as Ali attempted. The district court's failure to conduct a hearing *sua sponte* therefore was not plain error.

## III

■■■ Finally, Ali argues that Minnesota Statutes sections 152.025, subdivision 2 and 152.02, subdivision 2(6), which together criminalize possession of cathinone, are unconstitutionally vague. He contends that because the controlled substance schedules list cathinone but not khat, an ordinary person would not understand that possessing khat violates the law. We re-

view constitutional challenges de novo. *State v. Johnson*, 689 N.W.2d 247, 253 (Minn.App.2004), *review denied* (Minn. Jan. 20, 2005).

■ The United States and Minnesota constitutions provide that no person shall "be deprived of ... liberty ... without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. To comport with due process, criminal statutes must provide defendants with "fair warning" by defining crimes clearly enough that an ordinary person can understand what conduct is prohibited. *State v. Reha*, 483 N.W.2d 688, 690–91 (Minn.1992). The key to the fair-warning requirement is that "the statute, either standing alone *or as construed*, [must make] it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997) (emphasis added).

This court has previously addressed the issue of whether possessing khat is criminal. In *State v. Ali*, we stated that "khat ... contains cathine and cathinone, both controlled substances under Minnesota law." 613 N.W.2d 796, 797 (Minn.App. 2000), *review denied* (Minn. Sept. 13, 2000); *see also* Minn.Stat. § 152.02, subd. 7 (2008) (empowering the Board of Pharmacy to list additional controlled substances not in the statute); Minn. R. 6800.4240(E)(1) (codifying pharmacy regulation listing the positive isomer of cathine as a schedule IV substance). *Ali's* judicial pronouncement that khat contains the controlled substances cathine and cathinone, which rested on the plain meaning of the statute and the referenced pharmacy regulations, gives a person possessing khat fair warning of possible criminal prosecution under the statute. *See Lanier*, 520 U.S. at

267, 117 S.Ct. at 1225 (stating that judicial interpretations of a statute may provide fair warning by clarifying a statute's meaning). And because both cathine and cathinone are controlled substances, that cathinone might eventually transform entirely into cathine as the plant decomposes does not render unclear the unlawfulness of possessing khat.

Minnesota's requirement that drug possession be knowing mitigates any lingering vagueness concerns. Because the state must prove beyond a reasonable doubt that a defendant knew he possessed an illegal substance, there is little danger of arbitrary enforcement. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (recognizing that a scienter requirement may mitigate a statute's vagueness). We conclude that Ali had adequate notice that his possession of khat subjected him to prosecution for possession of a controlled substance.

## DECISION

The evidence is sufficient to prove that Ali knowingly possessed a controlled substance. The district court's failure to conduct a *Frye–Mack* hearing *sua sponte* was not plain error. And Minnesota Statutes sections 152.025 and 152.02 are not unconstitutionally vague in criminalizing cathinone possession.

**Affirmed.**