*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1900**

State of Minnesota,
Respondent,

vs.

Shawn Elson Randall,
Appellant.

**Filed November 3, 2014
Affirmed
Johnson, Judge**

Carlton County District Court
File No. 09-CR-12-2867

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul,
Minnesota; and

Thomas H. Pertler, Carlton County Attorney, Carlton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Connolly, Judge; and
Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Carlton County jury found Shawn Elson Randall guilty of possessing
methamphetamine based on evidence that a police officer found two baggies containing

methamphetamine on the ground near Randall's feet while Randall was emptying his pockets during an investigatory stop. Randall argues that the district court erred by denying his pre-trial motion to suppress evidence and that the evidence is insufficient to support the conviction. We affirm.

**FACTS**

On December 2, 2012, Sergeant Carey Ferrell and Trooper David Vereecken received a report that a man was selling tools door-to-door in the city of Cloquet. Sergeant Ferrell located the van described by the dispatcher, which was parked in the driveway of a home, with Randall sitting in the driver's seat. Sergeant Ferrell asked Randall whether the van was insured and who owned it. Randall exited the van to look for proof of insurance in the center console and glove compartment.

Meanwhile, Sergeant Ferrell also asked Randall whether he still had an outstanding arrest warrant. Sergeant Ferrell knew that Randall previously had an outstanding arrest warrant because, one week earlier, he had responded to a report involving Randall. Sergeant Ferrell asked the dispatcher to determine whether there was an outstanding arrest warrant on Randall.

During the previous week's encounter, Sergeant Ferrell discovered that Randall was in possession of a glass pipe. Based on the prior encounter, Sergeant Ferrell also asked Randall whether he "had anything on him today." Randall responded by saying, "No, go ahead and check." Randall then started digging in his pockets and handing the contents to Sergeant Ferrell, even though Sergeant Ferrell told him to stop. One of the items that Randall handed to Sergeant Ferrell was a hypodermic needle in a sealed

2

package that Sergeant Ferrell knew to be commonly used to inject narcotics. By that time, Trooper Vereecken had arrived to assist Sergeant Ferrell. Trooper Vereecken noticed two small baggies on the ground near Randall's feet and saw that they contained "a crystalline substance." A subsequent laboratory test indicated that the substance was methamphetamine.

The state charged Randall with fifth-degree controlled substance crime, in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2012). The state later amended the complaint to allege two additional charges: possession of a hypodermic needle, in violation of Minn. Stat. § 151.40, subd. 1 (2012), and possession of drug paraphernalia, in violation of Minn. Stat. § 152.092 (2012). The district court held a contested omnibus hearing in January 2013, at which Randall moved to suppress the evidence of the methamphetamine on the ground that Sergeant Ferrell's question was an unlawful expansion of a valid investigatory stop. The district court denied the motion because Randall had abandoned the baggies.

The case went to trial in June 2013. At the close of the state's case, the district court dismissed the second and third counts. The first count, which alleged possession of methamphetamine, was submitted to the jury, which found Randall guilty. In July 2013, the district court imposed a 15-month prison sentence but stayed execution of the sentence and placed Randall on probation for three years and ordered him to serve 270 days in jail. Randall appeals.

## D E C I S I O N

## I. Motion to Suppress Evidence

Randall first argues that the district court erred by denying his motion to suppress evidence. Randall does not challenge the district court's finding that Sergeant Ferrell validly seized him for purposes of an investigatory stop. But Randall contends that Sergeant Ferrell unlawfully expanded the scope of the investigatory stop by asking him whether he "had anything on him today," *i.e.*, whether he was in possession of any contraband. If the underlying facts are undisputed, as they are in this appeal, this court applies a *de novo* standard of review to a district court's denial of a motion to suppress. *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.; *see also* Minn. Const. art. I, § 10. As a general rule, a law enforcement officer may not seize a person without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). But an exception to the probable-cause requirement exists for an investigatory stop if the officer has reasonable suspicion that a person is engaged in criminal activity. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). A law enforcement officer may, "'consistent with the Fourth Amendment, conduct a brief, investigatory stop'" if "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000)). A reasonable articulable suspicion exists if, "in justifying the particular intrusion the police

4

officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968).

An investigatory stop generally must be limited in scope and duration to the original purpose of the stop. *Diede*, 795 N.W.2d at 845. An investigatory stop "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983) (plurality opinion)). The scope and duration of an investigatory stop may be expanded only if doing so would be "reasonably related to the investigation of an offense lawfully discovered or suspected during the stop," *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004), and only to investigate "'those additional offenses for which the officer develops a reasonable, articulable suspicion within the time necessary to resolve the originally-suspected offense,'" *Diede*, 795 N.W.2d at 845 (quoting *Wiegand*, 645 N.W.2d at 136). Thus, "each incremental intrusion during the stop" must be "'tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*.'" *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012) (quoting *Askerooth*, 681 N.W.2d at 365).

In this case, the record reveals that Sergeant Ferrell performed an investigatory stop after receiving a report that Randall was selling tools in a door-to-door fashion. The report indicates that the tools possibly had been stolen. The report received by Sergeant Ferrell identified Randall by his well-known nickname (Speedy), so Sergeant Ferrell

5

knew as he was driving to the scene that he would encounter Randall. Given these circumstances, Sergeant Ferrell's question to Randall about whether he possessed any contraband potentially could be justified under either the first prong or the third prong of *Askerooth* and *Smith*. Sergeant Ferrell did not expressly testify that the original purpose of the stop included an investigation into whether Randall was in possession of contraband. If we assume that the original purpose of the stop was to investigate a report of stolen property, Sergeant Ferrell's additional question would be an expansion of the stop, because "even a single question, depending on its content," may be an expansion of an investigatory stop. *See id.* at 351 n.1. Accordingly, we will analyze the validity of the expansion of the stop under the third prong of *Askerooth* and *Smith*, which requires reasonableness. *Id.* at 350.

"To be reasonable, the basis of the officer's suspicion must satisfy an objective, totality-of-the-circumstances test." *Id.* at 351. A court should ask "whether the facts available to the officer at the moment of the seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* at 351-52 (quotations omitted). The appropriateness of an officer's action "is based on a balancing of the government's need to search or seize and the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 352 (quotations omitted).

After balancing the competing interests recognized by the caselaw, we conclude that Sergeant Ferrell acted reasonably when he asked Randall whether he "had anything on him today." The state's interest in pursuing a brief investigation is strong whenever an officer suspects that a person may be in possession of controlled substances. *See, e.g.*,

6

*Wyoming v. Houghton*, 526 U.S. 295, 304, 119 S. Ct. 1297, 1302 (1999). An officer may develop a reasonable suspicion based on the officer's pre-existing knowledge about the person being stopped. *See State v. Burton*, 556 N.W.2d 600, 602 (Minn. App. 1996), *review denied* (Minn. Feb. 26, 1997). In this case, it was reasonable for Sergeant Ferrell to consider the prior incident involving Randall, which had occurred only one week earlier. Furthermore, Sergeant Ferrell had been unable to investigate Randall's prior possession of the pipe because Randall was taken to the hospital for medical treatment and then was released, so it was foreseeable that Randall might still be in possession of the pipe the following week. Furthermore, Sergeant Ferrell's question had no more than a minimal impact on Randall's "right to personal security free from arbitrary interference." *Smith*, 814 N.W.2d at 352 (quotations omitted). The question did not extend the duration of the stop because Sergeant Ferrell was waiting for the dispatcher to report back with information about the outstanding arrest warrant. Furthermore, Sergeant Ferrell's single question did not render the valid stop "'intolerable'" due to its "'intensity or scope.'" *Askerooth*, 681 N.W.2d at 364 (quoting *Terry*, 392 U.S. at 17-18, 88 S. Ct. at 1878).

In sum, Sergeant Ferrell's interest in expanding the investigatory stop by asking a single question about the pipe outweighs Randall's interest in avoiding arbitrary interference with his liberty. Considering the totality of the circumstances, Sergeant Ferrell's question was reasonable under the circumstances. Thus, the district court did not err by denying Randall's motion to suppress evidence. In light of this conclusion, we need not consider the state's argument that, as the district court found, Randall

7

abandoned the baggies by dropping them on the ground while he was emptying his pockets.

## II.  Sufficiency of the Evidence

Randall also argues that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of the offense charged.

When reviewing the sufficiency of the evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction.  *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted).  We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary."  *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011) (quotation omitted).  The court will "not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense."  *Ortega*, 813 N.W.2d at 100.

"A person is guilty of controlled substance crime in the fifth degree" if "the person unlawfully possesses one or more mixtures containing a controlled substance classified in Schedule I, II, III, or IV . . . ."  Minn. Stat. § 152.025, subd. 2(b)(1).  Methamphetamine is a Schedule II controlled substance.  Minn. Stat. § 152.02, subd. 3(d)(2) (2012).  A jury may find a defendant guilty of fifth-degree controlled substance crime if the state proves that (1) the defendant unlawfully possessed one or more mixtures containing a controlled substance, (2) the defendant knew or believed that the substance was a controlled substance, and (3) the defendant's acts took place on the alleged date and in the alleged

county. *See State v. Ali*, 775 N.W.2d 914, 918 (Minn. App. 2009), *review denied* (Minn. Feb. 16, 2010).

Randall contends that this court should apply heightened scrutiny to the evidentiary record because his conviction rests on circumstantial evidence. We apply a heightened standard of review if the state's evidence on one or more elements of the offense consists solely of circumstantial evidence. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013) (citing *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010); *State v. Leake*, 699 N.W.2d 312, 319-20 (Minn. 2005); *State v. Rhodes*, 657 N.W.2d 823, 840 (Minn. 2003)). In this case, the state did not introduce any direct evidence that Randall actually was in possession of methamphetamine because neither of the officers at the scene actually saw the methamphetamine on his person. Rather, Trooper Vereecken saw baggies containing methamphetamine lying on the ground next to Randall's feet while Randall was emptying his pockets. In closing argument, the prosecutor asked the jury to infer that Randall previously had the baggies in his pocket and dropped them on the ground, either intentionally or unintentionally. In essence, the prosecutor asked the jurors to infer Randall's possession based on circumstantial evidence. *See State v. Hanson*, 800 N.W.2d 618, 623 (Minn. 2011). Thus, it is appropriate for this court to apply the heightened standard of review applicable to circumstantial evidence.

When reviewing a conviction based on circumstantial evidence, we apply a two-step test to determine the sufficiency of the evidence. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, we "identify the circumstances proved." *Id.* (citing *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010)). "In identifying the circumstances

9

proved, we assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.* (citing *Andersen*, 784 N.W.2d at 329). Second, we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and then "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). We must consider the evidence as a whole and not examine each piece in isolation. *Andersen*, 784 N.W.2d at 332.

At the first step, we note that the state proved several circumstances in this case, including the following: Randall was sitting in the driver's seat of a van that was parked in the driveway of a residence. Randall got out of the van and stood next to the van. When Sergeant Ferrell asked Randall whether he "had anything on him today," Randall began emptying his pockets and handing the contents to Sergeant Ferrell, despite Sergeant Ferrell's repeated commands to stop. Among the things that Randall handed to Sergeant Ferrell was a hypodermic needle, which could be used to inject methamphetamine. While Randall was emptying his pockets, Trooper Vereecken observed two baggies on the ground next to Randall's feet. The baggies contained a substance that later was determined to be methamphetamine. Sergeant Ferrell did not see the baggies on the ground before Trooper Vereecken saw them.

At the second step, we examine the reasonableness of the inferences that may be drawn from the circumstances that have been proved. The state asked the jury to infer that Randall had the baggies in his pocket and then dropped the baggies on the ground as he was emptying his pockets, either intentionally or unintentionally. This is a reasonable

10

inference in light of the circumstances, and the inference is consistent with Randall's guilt. *See Moore*, 846 N.W.2d at 88. We also must determine whether there are reasonable inferences that are inconsistent with guilt. *See id.* Randall contends that the circumstances would support the inference that the baggies were lying on the ground before he and the officers were present in that place and that he happened to stand right next to the baggies. But this inference would be inconsistent with Sergeant Ferrell's testimony that he did not see the baggies before Randall started emptying his pockets. The inference that Randall identifies also would be inconsistent with the evidence that Randall possessed a hypodermic needle that could be used to inject methamphetamine. Furthermore, Randall's preferred inference would require this court to give credence to the extremely unlikely coincidence that Randall just happened to stand in a place where someone else previously had dropped baggies containing methamphetamine. "The only rational hypothesis to be drawn" from the circumstances proved is that Randall dropped the baggies that were found at his feet. *See Andersen,* 784 N.W.2d at 332. Thus, we conclude that the circumstances proved are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330.

Randall urges this court to apply the caselaw concerning constructive possession, a doctrine that the state may invoke to prove possession of controlled substances. *See State v. Florine*, 303 Minn. 103, 104-05, 226 N.W.2d 609, 610 (1975). In his closing argument, the prosecutor sought primarily to prove through circumstantial evidence that Randall actually possessed the baggies before he intentionally or unintentionally dropped them on the ground. The prosecutor referred to the doctrine of constructive possession

only briefly and as an alternative theory for proving possession. As discussed above, the state's circumstantial evidence is sufficient to support an inference that Randall actually possessed methamphetamine before he dropped the baggies on the ground. Thus, we need not consider whether the doctrine of constructive possession supports the jury's verdict.

Thus, we conclude that the evidence is sufficient to support the conviction.

**Affirmed.**