*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1554**

State of Minnesota,
Respondent,

vs.

Cory Cork Ryden,
Appellant.

**Filed August 10, 2015
Affirmed
Rodenberg, Judge**

Cook County District Court
File No. 16-CR-12-264

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Molly Hicken, Cook County Attorney, Grand Marais, Minnesota (for respondent)

Patrick Dinneen, Silver Bay, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Cory Cork Ryden appeals from his conviction of fifth-degree possession of a controlled substance and misdemeanor fourth-degree driving while impaired, arguing that the district court erred by (1) failing to provide the jury with a lesser-included-

offense instruction concerning possession of a small amount of marijuana; (2) allowing the admission at trial of late-disclosed documentary evidence prepared by a Minnesota Bureau of Criminal Apprehension (BCA) forensic scientist; (3) denying his request for a continuance to seek expert review of that late-disclosed documentary evidence; (4) permitting the state to amend the complaint; (5) denying his motion for a directed verdict on the fifth-degree controlled-substance charge; (6) allowing the deputy who administered the Intoxilyzer to testify despite insufficient foundation concerning the deputy's certification as an Intoxilyzer operator; and (7) not ordering disclosure of an anonymous phone call received by the Cook County Sheriff's Department before appellant was stopped. Appellant also argues that the state engaged in prosecutorial misconduct by failing to remove a reference to the preliminary breath test (PBT) in a redacted audio recording of the traffic stop that was played for the jury. We affirm.

## FACTS

Shortly before noon on June 18, 2012, and having been notified by dispatch of an anonymous phone call received earlier that day about an intoxicated individual operating a motor vehicle, Deputy Gregory Gentz of the Cook County Sheriff's Office was parked in a convenience store parking lot in Grand Portage, Minnesota. Deputy Gentz was looking for drivers who might be intoxicated. The deputy observed a black Corvette with "a loud, crackling muffler" approach a stop sign. The car proceeded through the stop sign without making a complete stop. Deputy Gentz pursued the car for approximately one-half mile and matched the speed of his squad car to that of the Corvette. He estimated that the Corvette was traveling between 60 and 61 miles per hour in a posted

55-miles-per-hour zone. Deputy Gentz signaled the Corvette to pull over because of the observed equipment and traffic violations.

After approaching the Corvette, Deputy Gentz recognized the driver as appellant. When the deputy asked appellant for his driver's license and insurance information, appellant gave the deputy an expired insurance card and continued to stare straight ahead as he spoke to the deputy. From his experience, Deputy Gentz believed that appellant was trying to conceal the odor of his breath. When asked whether he had been drinking, appellant replied that he had been drinking the night before, but he denied consuming alcohol that day. Appellant eventually made eye contact with Deputy Gentz, and the deputy noticed that appellant's eyes were watery. Deputy Gentz opted not to request that appellant perform field sobriety tests due to the terrain, but he administered a horizontal gaze nystagmus (HGN) test. Appellant exhibited six indices of impairment on HGN testing. A PBT was also administered, indicating that appellant had an alcohol concentration (BAC) of 0.117.

Deputy Gentz arrested appellant for driving while impaired and searched him incident to arrest. During the search, Deputy Gentz recovered a small plastic bag from appellant's front pants pocket containing what the deputy believed to be both marijuana and hashish. Appellant told the deputy that the bag contained "a little bit of weed." Deputy Gentz packaged the suspected hashish and the suspected marijuana in two different envelopes. Only the suspected hashish was sent to the BCA for testing.

Appellant was then transported to the law enforcement center. He was read the implied-consent advisory and agreed to submit to a breath test. Deputy William

3

Sandstrom administered the Intoxilyzer, which revealed that appellant had a BAC of 0.09 within two hours of his arrest.

Appellant was charged with one count of fifth-degree possession of a controlled substance for alleged unlawful possession of hashish in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012), and two counts of fourth-degree driving while impaired in violation of Minn. Stat. § 169A.20, subds. 1(1), 1(5) (2012). The controlled-substance charge was later amended to allege possession of "tetrahydrocannabinols or the resinous form of marijuana," replacing the reference to "hashish."

At trial, the state called Deputy Gentz, Deputy Sandstrom, and BCA forensic scientist Amy Granlund as witnesses. Deputy Gentz testified about the traffic stop and the substances found in appellant's pocket during the search incident to arrest. Deputy Sandstrom testified about his certification to operate the Intoxilyzer and the results of the test administered on appellant, specifically that appellant had a BAC of 0.09. Granlund testified about the procedures used to test one of the controlled substances found in appellant's pocket, concluding that the controlled substance was not marijuana or hashish, but was instead a substance containing tetrahydrocannabinols (THC). She testified that the substance was not marijuana.

After the state's case-in-chief, appellant moved the district court for judgment of acquittal on the controlled substance possession charge. The motion was denied. The jury later found appellant guilty of fifth-degree possession of a controlled substance and one count of misdemeanor fourth-degree driving while impaired (over .08), and acquitted appellant of a separate misdemeanor fourth-degree driving-while-impaired charge.

4

On March 28, 2014, appellant moved for a new trial. The district court denied the motion. This appeal followed.

## D E C I S I O N

### I. Lesser-Included Jury Instruction

At trial, appellant requested that the district court instruct the jury on the elements of possession of a small amount of marijuana as a lesser-included offense of fifth-degree possession of a controlled substance. The district court denied the request. Appellant argues that the district court abused its discretion in denying his request for the lesser-included-offense instruction.

Denial of a requested lesser-included-offense instruction is reviewed for an abuse of discretion. *State v. Dahlin*, 695 N.W.2d 588, 597 (Minn. 2005). The district court must give such an instruction when it is warranted by the evidence. *Id.* A lesser-included-offense instruction is warranted when "1) the lesser offense is included in the charged offense; 2) the evidence provides a rational basis for acquitting the defendant of the offense charged; and 3) the evidence provides a rational basis for convicting the defendant of the lesser-included offense." *Id.* at 598. Additionally, "[district] courts must look at the evidence in the light most favorable to the party requesting the instruction when determining whether a lesser-included offense instruction is warranted." *Id.* However, "a lesser-included offense instruction need not be given if *no* evidence is adduced to support giving the . . . instruction." *Id.* at 595.

Here, there were two evidence bags (trial exhibits 13A and 13B), prepared by Deputy Gentz, of the evidence seized when appellant was arrested. Both were offered

5

and received. The contents of one bag (Exhibit 13B) were tested by the BCA and found to be a substance containing THC, but identified by Granlund as "definitely not . . . marijuana." The contents of the other bag (Exhibit 13A) were described as a "green leafy substance." The contents of Exhibit 13A were never tested or identified by any witness as marijuana. No trial witness testified that *either* of the two substances found in appellant's pocket were marijuana.[1]

No evidence in the record supports a conclusion that appellant possessed any amount of marijuana. On this record, he could not be convicted of that offense. In order to warrant a lesser-included-offense instruction, the evidence must provide a "rational basis for convicting [appellant] of the lesser-included offense." *Id.* at 598. The district court did not abuse its discretion in denying appellant's request for a lesser-included-offense instruction.

## II. Other Claims of Error

Appellant raises several additional issues on appeal without providing legal authority or analysis. Generally, "[a]n assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not

---

[1] While appellant did tell Deputy Gentz that he had "a little bit of weed," absent any other proof that appellant possessed marijuana, that statement is insufficient to convict appellant of possession of marijuana. *See Dahlin*, 695 N.W.2d at 598 (requiring evidence in the record sufficient to *acquit* the defendant of the greater charge *and* convict of the lesser included). Marijuana is colloquially referred to as "weed," but the noun "weed" has multiple other definitions, including "cigarette" or "tobacco." *The American Heritage Dictionary* 1453 (5th ed. 2011). Moreover, it is not clear from this fleeting reference, received into evidence as hearsay through Deputy Gentz, whether appellant was referring to the substance identified as THC by Granlund, the unidentified leafy substance, or something else altogether.

6

be considered on appeal unless prejudicial error is obvious on mere inspection." *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971). But appellate courts have the responsibility to "decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues[,] or to cite relevant authorities," *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (quotation omitted). Accordingly, we address appellant's additional arguments in turn.

A.  *Issues Pertaining to Late Disclosure of Evidence*

Appellant raises several issues pertaining to the disclosure of the full laboratory report prepared by Granlund, the BCA forensic scientist. Appellant was provided with the cover page of Granlund's report on December 14, 2012. The cover page of the report shows that the substance tested by the BCA (Exhibit 13B) was neither marijuana nor hashish, but was instead a substance containing THC. At a pretrial hearing on February 19, 2014, the state disclosed the full lab report, which included the BCA case notes made during testing and graphs depicting Granlund's testing of the substance. The state concedes that it was late in disclosing the entirety of Granlund's report. At trial, the state offered only a one-page printout from the late-disclosed material.

1.  *Request for Continuance*

Appellant argues that the district court erred in denying his request for a continuance to seek expert review after being presented with Granlund's full lab report. "Ruling on a request for a continuance is within the [district] court's discretion and a conviction will not be reversed for denial of a motion for a continuance except when such

7

denial is a clear abuse of discretion." *State v. Rainer*, 411 N.W.2d 490, 495 (Minn. 1987). We "examine the circumstances before the [district] court at the time the motion was made to determine whether the [district] court's decision prejudiced [appellant] by materially affecting the outcome of the trial." *State v. Turnipseed*, 297 N.W.2d 308, 311 (Minn. 1980).

First, it is unclear from our review of the record whether appellant requested a continuance at the pretrial hearing. But respondent does not argue that a continuance was not requested. We therefore analyze the issue assuming that a request for a continuance was made (perhaps off the record) and denied by the district court.

Even if a continuance request was made and denied, we see no clear abuse of the district court's discretion. Appellant asserts that he located an expert between the time Granlund's full lab report was disclosed and the beginning of trial, but was unable to retain the expert as a trial witness in that short time. But, on December 14, 2012, over two months earlier, appellant was provided with a copy of the cover page of Granlund's signed report identifying the substance tested as containing THC. And, while the trial was originally scheduled to begin on February 20, 2014, trial was postponed until March 13, 2014, almost a month after Granlund's full lab report was disclosed. Appellant had substantial time to procure an expert witness. The district court acted within its discretion concerning scheduling.

2.    *Admission of Late-Disclosed Evidence*

Appellant argues that the district court erred in not excluding Granlund's full lab report because of the late disclosure. Appellant seems to challenge both the district

court's pretrial evidentiary ruling allowing the state to present Granlund's full lab report and the district court's evidentiary ruling at trial admitting the one-page printout from Granlund's lab report.

In a criminal case, the defendant does not have a right to appeal a pretrial evidentiary ruling. *State v. Kvale*, 352 N.W.2d 137, 139-40 (Minn. App. 1984) (citing *State v. Collins*, 270 Minn. 581, 132 N.W.2d 802 (1964)). Here, although the district court ruled pretrial that the entire lab report was admissible, only a single page of the report was offered by the state at trial.

We therefore confine our review to the one-page laboratory printout actually received into evidence as Exhibit 15. It was identified as a gas chromatogram mass spectrum printout from an instrument Granlund used to analyze the substance in Exhibit 13B. The state offered Exhibit 15, and appellant did not object. As the state did *not* offer the full lab report, it was incumbent on appellant to object to Exhibit 15 if he wished to preserve that objection. *See State v. Rossberg*, 851 N.W.2d 609, 617-18 (Minn. 2014) (providing that "we will not consider a challenge to the admission of evidence unless a timely objection . . . appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context" (quotation omitted)); *see also State v. Brown*, 792 N.W.2d 815, 820 (Minn. 2011); Minn. R. Evid. 103(a)(1).

We may, however, review unobjected-to evidence under a plain-error standard. *State v. Medal-Mendoza*, 718 N.W.2d 910, 919 (Minn. 2006). Under this standard, appellant must show that the district court's failure to exclude the printout was "(1) an error; (2) that was plain; and (3) that affected [appellant's] substantial rights." *Id.* "Plain

error" is "clear error affecting substantial rights that resulted in a miscarriage of justice." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007) (quotation omitted). "An error affects substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Id.*

Appellant does not identify, and we are unable to find, any violation of the rules of evidence, case law, or standards of conduct by the district court receiving the printout into evidence. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (providing that an error is plain if it is clear or obvious or if it "contravenes case law, a rule, or a standard of conduct"). In fact, receipt of a printout of laboratory test results appears unremarkable. The forensic scientist who prepared the report was present in court and testified. Under Minn. Stat. § 634.15, subd. 1(a)(1) (2014), "results of any laboratory analysis or examination" is admissible in evidence in a criminal trial "if it is prepared and attested by the person performing the laboratory analysis or examination in any laboratory operated by the Bureau of Criminal Apprehension." Granlund, a qualified BCA forensic scientist, generated the printout as a result of her analysis of the controlled substance, laid the foundation for its admission at trial, and testified about its contents. Absent an objection at trial, nothing in the record suggests that receiving the printout was error, much less plain error.

And, even if we were to conclude that receipt of the printout was plainly erroneous, receipt of it did not affect appellant's substantial rights. The printout was primarily used to explain the scientific procedures Granlund employed in identifying the controlled substance as containing THC. She identified the substance in her testimony.

10

Granlund also testified that the substance she tested was not hashish and was "definitely not" marijuana. There is no reasonable likelihood that any error, if present, significantly affected the jury's verdict.

### 3. *Amendment of the Complaint*

Appellant argues that the district court abused its discretion by permitting the state to amend the fifth-degree possession-of-a-controlled-substance charge in the complaint by replacing "hashish" with "tetrahydrocannabinol" after the state received Granlund's report. "The district court has broad discretion to grant or deny leave to amend a complaint, and its ruling will not be reversed absent a clear abuse of that discretion." *State v. Baxter*, 686 N.W.2d 846, 850 (Minn. App. 2004).

Under Minn. R. Crim. P. 3.04, subd. 2, the state may amend a complaint at any time before commencement of trial. *See State v. Bluhm*, 460 N.W.2d 22, 24 (Minn. 1990) (stating that "the [district] court is relatively free to permit amendments to charge additional offenses before trial is commenced" under rule 3.04, subd. 2); *State v. Smith*, 313 N.W.2d 429, 430 (Minn. 1981) ("Minn. R. Crim. P. 3.04, subd. 2, provides for free amendment of a complaint before trial.").

Appellant learned of the state's intention to amend the complaint at a pretrial hearing on February 19, 2014. The state noted that it would be changing the charging language of the fifth-degree controlled-substance crime from "hashish" to "tetrahydrocannabinol."[2] While appellant argues that the state amended the complaint on

---

[2] The reason for this change is that Granlund, after testing the contents of Exhibit 13B, concluded that the substance was not "hashish" because she was unable to identify more

11

the morning of trial, the record shows that the amended complaint was filed on March 4, 2014, eight days before appellant's trial began, with only the minor charging-language modification of which the state had alerted appellant and the district court two weeks earlier. The district court did not abuse its discretion by permitting amendment of the complaint.

## B.    *Prosecutorial Misconduct*

Appellant also argues that the state engaged in prosecutorial misconduct when it played at trial an audio recording of the traffic stop from which reference to a PBT had not been redacted. Under Minn. Stat. § 169A.41, subd. 2 (2014), the results of a PBT "must not be used in any court action." While appellant did not object to the error when the recording was playing, he objected to the PBT reference after the jury exited the courtroom. We consider that objection to have been timely.

Appellant asserts that, on the audio recording played for the jury, Deputy Gentz can be heard saying, "I'll be out doing a PBT." Appellant also asserts that "the crinkling of the cellophane that is removed from the straw of the PBT just prior to administering the test" was erroneously left unredacted. The state concedes that, while it attempted to redact the portions of the audio recording that referenced the PBT, it erred in failing to redact the deputy's reference to the PBT.

We review objected-to claims of prosecutorial misconduct under "a two-tiered harmless-error test." *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). "[C]ases

than one cannabinoid beyond THC, as is required by the BCA's standard operating procedures to classify a substance as hashish. The level of the charged offense remained the same.

12

involving claims of unusually serious prosecutorial misconduct" are reviewed for "certainty beyond a reasonable doubt that misconduct was harmless," while "cases involving . . . less-serious prosecutorial misconduct" are reviewed "to determine whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* The misconduct claim here is not "unusually serious" and we therefore apply the latter standard.

On this record,[3] we cannot review the claim of prosecutorial misconduct in not redacting the sound of removing the cellophane from the PBT straw. Without the audio recording, the record supports neither that there is a sound in the recording that can be definitively identified as crinkling cellophane, nor that a jury would have known any such sound to be related to a PBT.

Concerning the reference to the PBT by Deputy Gentz, the state agrees that it erred in not redacting that comment. But neither party asserts that there was a reference made to the PBT *result*. The jury had for its consideration Intoxilyzer evidence of a BAC of 0.09. This was substantial evidence on which the jury could find appellant guilty of the misdemeanor DWI charge. Deputy Gentz also testified that, while he was conducting the traffic stop, he observed that appellant's eyes were watery and he could smell the odor of alcohol emanating from appellant's vehicle. All of this evidence made it unnecessary that the jury focus or rely on the fleeting reference to a PBT from a field audio recording. The erroneously unredacted reference was harmless.

---

[3] The record on appeal does not include the recording.

13

Appellant also argues that it was error for the state to redact from the audio recording his admission that he possessed "a little bit of weed." Appellant's argument makes no sense. The state played a portion of the audio recording, but both parties agree that the state did not play the portion of the recording wherein appellant made that statement. If appellant wanted the jury to hear his admission to possessing "weed," he could have offered to play that portion of the recording. He did not. It was not the state's responsibility to ensure that the jury heard the evidence that appellant wished to present. There was no prosecutorial misconduct in not presenting evidence that appellant wished the jury to hear.[4]

## C.  *Directed Verdict*

Appellant argues that the district court erred in denying his motion for a directed verdict on the fifth-degree controlled-substance charge. A motion for a directed verdict is procedurally equivalent to a motion for a judgment of acquittal. *State v. Slaughter*, 691 N.W.2d 70, 74 (Minn. 2005). We review the denial of a motion for judgement of acquittal de novo. *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013).

Under Minn. R. Crim. P. 26.03, subd. 18(1)(a), a "defendant may move for . . . a judgment of acquittal on one or more of the charges if the evidence is insufficient to sustain a conviction." A district court properly denies the motion if "the state's evidence,

---

[4] Deputy Gentz testified that appellant made that statement. Even if we could somehow conclude that there was prosecutorial misconduct, the jury not having heard that evidence a second time could not possibly have "played a substantial part" in the jury's verdict. *Yang*, 774 N.W.2d at 559.

14

when viewed in the light most favorable to the state, was sufficient to sustain a conviction." *Slaughter*, 691 N.W.2d at 75.

To prove that appellant was guilty of fifth-degree possession of a controlled substance, the state had to prove the following elements beyond a reasonable doubt: (1) appellant unlawfully possessed one or more mixtures containing THC; (2) appellant knew or believed that the substance he possessed was a controlled substance; and (3) appellant's act took place on or about June 18, 2012, in Cook County, Minnesota. *See* Minn. Stat. § 152.025, subd. 2(a)(1); 10 *Minnesota Practice*, CRIMJIG 20.36 (2014). Appellant challenges only the second element, that he knowingly possessed THC, arguing that his admitted possession of "a little bit of weed" refers to marijuana and demonstrates that he could not have known that he was in possession of a different controlled substance.

"Possession crimes require proof that the defendant had actual knowledge of the nature of the substance in his possession." *State v. Ali*, 775 N.W.2d 914, 918 (Minn. App. 2009). Generally, "proof that [appellant] was aware that he possessed a controlled substance satisfies the [fifth-degree possession of a controlled substance] statute's actual-knowledge requirement." *Id.* at 919.

Marijuana is a Schedule I controlled substance. *See* Minn. Stat. § 152.02, subd. 2(h)(1). At trial, Deputy Gentz testified that appellant admitted that the plastic bag in his pocket contained "a little bit of weed," apparently meaning marijuana. While appellant argues that no proof was provided at trial that he knowingly possessed THC, the actual-knowledge element does not require knowledge of the exact substance. Rather, the

15

requirement is that appellant knew he was in possession of a controlled substance. *See* Minn. Stat. § 152.025, subd. 2(1); CRIMJIG 20.36. Appellant's knowledge that he possessed marijuana is sufficient to satisfy the actual-knowledge requirement of section 152.025, subd. 2(a)(1).

Through the testimony of Granlund, the state proved that the substance appellant possessed (Exhibit 13B) contained THC but was not marijuana. While appellant argues that "[t]he distinction between marijuana and THC can be confusing" and that Granlund "was unable to rule out that [the other substance in Exhibit 13A] was marijuana," the record does not support these arguments. Granlund testified unequivocally that the tested substance (Exhibit 13B) was not marijuana. Nobody tested the contents of the other evidence bag (Exhibit 13A). And as discussed above concerning the lesser-included-offense instruction, the record is insufficient to permit a conclusion that the untested substance was marijuana.

Viewed in the light most favorable to the state, the evidence presented was sufficient to sustain appellant's conviction for fifth-degree possession of a controlled substance. The district court did not err in denying appellant's motion for a directed verdict.

D.     *Intoxilyzer Testimony*

Appellant argues that the district court abused its discretion in allowing Deputy Sandstrom to testify about his administration of the Intoxilyzer because insufficient foundation was laid regarding the officer's certification as an Intoxilyzer operator. We review a district court's evidentiary rulings for an abuse of discretion. *State v. Caine*, 746

N.W.2d 339, 349 (Minn. 2008). The adequacy of foundation is a question lying within the district court's discretion. *Johnson v. Wash. Cnty.*, 518 N.W.2d 594, 601 (Minn. 1994). Appellant has the burden of establishing that the district court abused its discretion and any resulting prejudice. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

The proponent of a chemical test must lay sufficient foundation to establish the reliability of the test and that the administration of the test conformed to the procedures necessary to ensure reliability. *State v. Dille*, 258 N.W.2d 565, 567 (Minn. 1977). The requirements to show that the Intoxilyzer test was reliable include that a certified Intoxilyzer operator administered the test and that the instrument was working properly. *Kramer v. Comm'r of Pub. Safety*, 706 N.W.2d 231, 236 (Minn. App. 2005). Appellant challenges only Deputy Sandstrom's certification to operate the Intoxilyzer. He does not challenge whether the Intoxilyzer was operating properly.

Contrary to appellant's argument, Deputy Sandstrom testified at trial that he was a certified Intoxilyzer 5000 operator at the time he conducted appellant's breath test. On cross-examination, appellant's counsel questioned the deputy about when his certification was last updated. Deputy Sandstrom testified that it "[m]ight've been either in 2010 or 2011, I'm not exactly . . . sure on the years. But every two years, we go through a . . . an Intoxilyzer recertification course." Appellant seems to argue that the deputy's inexact memory of when he was last recertified calls into question the foundation for admission of his testimony. The record does not support appellant's argument. Deputy Sandstrom testified that he was a certified Intoxilyzer operator at the time he administered the test.

17

Despite the deputy not precisely recalling the cycle of his recertification, the record contains nothing to suggest that he was not a certified operator. The district court did not abuse its discretion by allowing the deputy to testify about his administration of the Intoxilyzer and the results of the test.

## E.    *Anonymous Phone Call*

Appellant makes one final argument, as follows:  "A further irregularity in this trial that was, and remains, a problem is the non-disclosure of the 'anonymous' phone call just prior to the traffic stop."  The phone call is what prompted Deputy Gentz to be looking out for intoxicated drivers.  Appellant seems to argue that the district court erred in not allowing the use of the anonymous phone call at trial.  But *appellant* had objected to the use of the anonymous phone call during a pretrial hearing.  Based on appellant's objection, the district court excluded the phone call, determining that it was inadmissible hearsay and unreliable.  The state did not use or make reference to the call at trial. Having prevailed concerning the use of the anonymous phone call, appellant's argument on appeal concerning that call is meritless.

**Affirmed.**